UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

THOMAS R. GARRETT,                          )
                                            )
                        Plaintiff,          )
                                            )
            v.                              )        No.  4:10CV1891 TIA
                                            )
MICHAEL ASTRUE, Commissioner                )
of Social Security,                         )
                                            )
                        Defendant.          )

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration.

The suit involves applications for Disability Insurance Benefits under Title II of the Social

Security Act and Supplemental Security Income under Title XVI of the Act.  Claimant has filed a

Brief in Support of his Complaint; the Commissioner has filed a Brief in Support of his Answer.

The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

On March 9, 2007, Claimant filed Applications for Supplemental Security Income

payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et. seq. (Tr. 35-

37) and for Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr.

35-37)[1] alleging disability since February 1, 2009 due to emphysema, chronic bronchitis, COPD,

and back pain due to deteriorating disc.  (Tr. 24, 59, 63).  The applications were denied (Tr. 24-

28), and Claimant subsequently waived his right to a personal appearance before an

_____

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer.
(Docket No. 12/filed December 21, 2010).

Administrative Law Judge (ALJ).  (Tr. 22).  In a decision dated November 24, 2009, the ALJ

found that Claimant had not been under a disability as defined by the Social Security Act.  (Tr. 5-

16).  The Appeals Council denied Claimant's Request for Review on September 16, 2010.  (Tr. 1-

3).  Thus, the ALJ's decision is the final decision of the Commissioner.

## II.      Medical and Other Records

In the Disability Report - Field Office dated April 28, 2009, Claimant reported not being

treated by a doctor due to no medical insurance.  (Tr. 59-61).  In the Disability Report - Adult,

Claimant reported his conditions prevent him from working, because "I'm out of breath after very

little walking and exertion" and  bending and lifting cause him problems.  (Tr. 63).  Claimant

reported that he stopped working due to his breathing problems and back pain.  (Tr. 63).

Claimant worked as a manager for a tree trimming business from 1982-2008.  (Tr. 64).

In the Function Report - Adult completed on May 26, 2009, Claimant reported his daily

activities include making coffee, watching television, preparing meals in the microwave, picking

up his room, and doing laundry twice a week.  (Tr.86-88).  Claimant noted that he can lift fifteen

pounds but not for long and unable to walk a far distance.  (Tr. 91).

On June 5, 2009, Claimant received treatment in the emergency room at Mineral Area

Regional Medical Center for dyspnea.  (Tr. 106).  In the Clinical Impression, the doctor noted

Claimant to have chronic obstructive pulmonary disease and acute exacerbation.  (Tr. 108).

Claimant reported symptoms came on gradually two months earlier and became progressively

worse.  Claimant's symptoms were of moderate intensity and exacerbated by nothing.  The

examining doctor noted the musculoskeletal examination to be negative on extreme pain and

respiratory examination positive for shortness of breath and wheezing.  (Tr. 106).  The doctor

found Claimant's respiratory effort to be mildly labored and noted his lung sounds to be diminished air movement with scattered wheezes especially in the upper lobes. (Tr. 104). The doctor treated Claimant with a breathing treatment and noted that Claimant tolerated the treatment well and his symptoms improved. (Tr. 105). The doctor observed that Claimant was able to ambulate independently and could perform all activities of daily living without assistance. (Tr. 104). Claimant rated his pain as a 0 on the scale from 1-to-10 scale. (Tr. 104). At the time of discharge, Claimant's respirations were regular and unlabored. (Tr. 104). The doctor prescribed Doxycycline 100mg, Albuterol nebulizer and Medrol Dose Pak. (Tr. 108). The x-ray of two view chest revealed negative results. (Tr. 118).

On August 27, 2009, on referral by Disability Determination, Dr. John Demorlis completed a consultative evaluation. (Tr. 124-28). Claimant reported being diagnosed with emphysema and bronchitis in 1995. (Tr. 124). Claimant indicated that he cannot shower without panting with dyspnea, but he is alright when he is sitting still. Claimant reported having a nebulizer, and this helping relieve his symptoms. Dr. Demorlis noted that Claimant has had back pain since 1990 due to hard labor. Claimant reported being able to walk okay on level ground about one half block so long as he moves slowly. His lower back pain prevents him from standing more than five minutes. Claimant can sit about one hour before he has to move around and can lift/carry twenty pounds briefly due to dyspnea and back pain. (Tr. 124). Dr. Demorlis observed that Claimant moves around easily, and his gait to be normal. (Tr. 124, 128). Dr. Demorlis found Claimant's range of motion values to all be normal. (Tr. 122-23). Claimant reported being unable to afford any medications. (Tr. 125). Claimant was a 2.5 package smoker for thirty-four years, but eight months earlier, he cut back to three to four cigarettes a day. (Tr. 125).

Examination of Claimant's lungs showed mild prolonged expiratory phase with expiratory wheezes and hyperresonance on percussion. (Tr. 126). Dr. Demorlis observed Claimant at times to be dyspneic when trying to talk. (Tr. 126). Dr. Demorlis listed COPD, chest pain, chronic low back pain, and approximate 85 pack/year history tobacco use - ongoing in his impression. (Tr. 127). Dr. Demorlis provided Claimant with Albuterol aerosol samples, and Claimant indicated receiving relief in the past. (Tr. 127).

In the Explanation of Determination dated August 31, 2009, Megan Marchi, a disability examiner determined as follows:

> The claimant's vocational profile is consistent with the ability to adjust to other work. (The DOT lists 2500 unskilled jobs in the sedentary to medium work ranges, the number of which would not be significantly reduced by the claimant's nonexertional restrictions.) Jobs, for example, the claimant could do, but not limited to, include: mail clerk (clerical) DOT 209.687-026; furniture rental consultant (retail trade) DOT 295.357-018; and laundry worker, domestic (domestic service) DOT 302. 685-010.
>
> According to County Business Patterns, these jobs exist in significant numbers in the national economy.

(Tr. 21).

The non-examining consultant, Ms. Marchi, with the Missouri Section of Disability Determination, completed a Physical Residual Functional Capacity Assessment ("PRFCA") on September 1, 2009. (Tr. 129). Ms. Marchi listed Claimant's primary diagnosis to be COPD. (Tr. 129). The examiner indicated that Claimant can occasionally lift twenty pounds, frequently lift ten pounds, and stand and walk about six hours in an eight-hour workday. (Tr. 130). The consultant noted that Claimant can sit about six hours in an eight-hour workday and has unlimited capacity, other than shown for lift and/or carry, to push and/or pull. (Tr. 130). The examiner noted

Claimant's postural limitations to be limited to occasional climbing ladders, ropes and scaffolds. (Tr. 131). The examiner indicated that Claimant has no established visual, manipulative. or communicative limitations. (Tr. 131-32). With respect to environmental limitations, the examiner found that Claimant should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation. (Tr. 132). In support, the examiner noted how in the current consultative examination, the doctor observed Claimant's back to have normal curvatures, no edema to be present, his range of motion and strength throughout to be normal, and his gait to be normal. (Tr. 134).

### III.    The ALJ's Decision

The ALJ determined that Claimant met the insured status requirements of the Social Security Act through September 30, 2012. (Tr. 10). The Claimant has not engaged in substantial gainful activity since February 1, 2009, the alleged onset date. The ALJ found that Claimant has the following physical impairments: chronic obstructive pulmonary disease and obesity, and these impairments are severe. (Tr. 10). Next, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11). After careful consideration of the entire record, the ALJ found that Claimant has the residual functional capacity to perform light work except that Claimant is limited to only occasional climbing of ladders, ropes, and/or scaffolds, and he should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, etc., but he is able to perform frequent climbing of ramps and stairs as well as frequent stooping, kneeling, crouching, crawling, and balancing. (Tr. 14). The ALJ found that Claimant is unable to perform any past relevant work. (Tr. 15). Claimant has a limited level of education and

is able to communicate in English.  The ALJ noted transferability of job skills not be material in the determination of disability, because using the Medical-Vocational rules, Claimant is not disabled regardless if he has transferable job skills.  Considering Claimant's age, education, work experience, and residual functional capacity, the ALJ opined there are jobs that exist in significant numbers in the national economy that Claimant can perform.  (Tr. 15).  Accordingly, the ALJ found that Claimant has not been under a disability from February 1, 2009, through the date of this decision.  (Tr. 16).

## IV.     Discussion

Under the Act, the Commissioner shall find a person disabled if the claimant is "unable to engage in any substantial activity by reason of any medically determinable physical or mental impairment," which must last for a continuous period of at least twelve months or be expected to result in death.  42 U.S.C. § 1382c(a)(3)(A).  The impairment suffered must be "of such severity that [the claimant] is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. §§ 404.1520, 416.920; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009); Ramirez v. Barnhart, 292 F.3d 576, 580 (8th Cir. 2002); Pearsall v. Massanari, 272 F.3d 1211, 1217 (8th Cir. 2002).  "Each step in the disability determination entails a separate analysis and legal standard."  Lacroix. v. Barnhart, 465 F.3d 881, 888 (8th Cir. 2006).  First, the claimant cannot be presently engaged in "substantial gainful activity."  See 20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must have a severe impairment.  See 20 C.F.R. §§ 404.1520(c),

416.920(c).  The Act defines "severe impairment" as "any impairment or combination of

impairments which significantly limits [claimant's] physical or mental ability to do basic work

activities ...."  Id.  The sequential evaluation process may be terminated at step two only when the

claimant's impairment or combination of impairments would have no more than a minimal impact

on [his] ability to work."  Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

At the third step in the sequential evaluation process, the ALJ must determine whether the

claimant has a severe impairment which meets or equals one of the impairments listed in the

regulations and whether such impairments meets the twelve-month durational requirement.  See

20 C.F.R. §§ 404.1520(d), 416.920(d) and Part 404, Subpart P, Appendix 1.  If the claimant

meets these requirements, he is presumed to be disabled and is entitled to benefits.  Warren v.

Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994).

"Prior to step four, the ALJ must assess the claimant's [RFC], which is the most a

claimant can do despite [his] limitations."  Moore, 572 F.3d at 523 (citing 20 C.F.R. §

404.1545(a)(1)).  "[RFC] is not the ability merely to lift weights occasionally in a doctor's office;

it is the ability to perform the requisite physical acts day in and day our, in the sometimes

competitive and stressful conditions in which real people work in the real world."  Ingram v.

Chater, 107 F.3d 598, 604 (8th Cir. 1997) (internal quotations removed).  Moreover, "a

claimant's RFR [is] based on all relevant evidence, including the medical records, observations by

treating physicians and others, and an individual's own description of his limitations."  Moore,

572 F.3d at 523 (quoting Lacroix, 465 F.3d at 887.  "The need for medical evidence, however,

does not require the [Commissioner] to produce additional evidence not already within the record.

'[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long

as other evidence in the record provides a sufficient basis for the ALJ's decision.'" Howard v.

Massanari, 255 F.3d 577, 581 (8th Cir. 2001) (quoting Frankl v. Shalala, 47 F.3d 935, 937-38

(8th Cir. 1995) (alterations in original).

In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility.

Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Pearsall, 274 F.3d at 1217.  This evaluation

requires that the ALJ consider "(1) a claimant's daily activities; (2) the duration, frequency, and

intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side

effects of medication; and (5) functional restrictions."  Wagner, 499 F.3d at 851 (citing Polaski v.

Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  "The credibility of a claimant's subjective

testimony is primarily for the ALJ to decide, not the courts."  Id. (quoting Pearsall, 274 F.3d at

1218).  After considering the Polaski factors, the ALJ must make express credibility

determinations and set forth inconsistencies in the record which caused the ALJ to reject the

claimant's complaints.  Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); Beckley v. Apfel, 152

F.3d 1056, 1059 (8th Cir. 1998).

At step four, the ALJ determines whether claimant can return to his past relevant work,

"review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant

has] done in the past."  20 C.F.R. §§ 404.1520(e), 416.920(e).  "Past relevant work" is "[w]ork

the claimant has already been able todo" and has been "done within the last 15 years, lasted long

enough for him or her to learn to do it, and was substantial gainful activity."  20 C.F.R. §

220.130(a).  "[A]n ALJ must make explicit findings on the demands of the claimant's past

relevant work."  Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004).

The burden at step four remains with the claimant to prove his RFC and establish that he

cannot return to his past relevant work.  Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436

F.3d 923, 928 (8th Cir. 2006); Vandeboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).

If the ALJ holds at step four of the process that a claimant cannot return to past relevant

work, the burden shifts at step five to the Commissioner to establish that the claimant maintains

the RFC to perform a significant number of jobs within the national economy.  Banks v.

Massanari, 258 F.3d 820, 824 (8th Cir. 2001).  See also 20 C.F.R. §§ 404.1520(f), 416.920(f).

The Commissioner may meet his burden by eliciting testimony by a vocational expert, Pearsall,

274 F.3d at 1219, or '[i]f [a claimant's] impairments are exertional (affecting the ability to

perform physical labor), the Commissioner may carry this burden by referring to the medical-

vocational guidelines or 'grids,' which are fact-based generalizations about the availability of jobs

for people of varying ages, educational backgrounds, and previous work experience, with

differing degrees of exertional impairment."  Holley v. Massanari, 253 F.3d 1088, 1093 (8th Cir.

2001).  "However, when a claimant is limited by a nonexertional impairment, such as pain or

mental incapacity, the Commissioner may not rely on the Guidelines and must instead present

testimony from a vocational expert to support a determination of no disability."  Id.; accord Baker

v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006).  See also Ellis v. Barnhart, 392 F.3d 988, 996

(8th Cir. 2005) (noting that the Guidelines may be employed if the nonexertional impairment does

not diminish or significantly limit the claimant's RFC); Social Security Ruling 83-47C, 1983 W.L.

31276, *3 (S.S.A. 1983) ("[I]f the nonexertional limitation restricts a claimant's performance of a

full range of work at the appropriate [RFC] level, nonexertional limitations must be taken into

account and a nonguideline determination made.").

If the claimant is prevented by his impairment from doing any other work, the ALJ will

find the claimant to be disabled.

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "'if supported by substantial evidence on the record as a whole.'" Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); accord Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001). "'Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion.'" Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id.; Finch, 547 F.3d at 935; Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo, 241 F.3d at 1037, or might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant contends the ALJ's decision is not supported by substantial evidence inasmuch as the ALJ relied on non-medical evidence in formulating Claimant's RFC.

The ALJ assessed Claimant's RFC as including the ability to perform light work, frequently stooping, kneeling, crouching, crawling, balancing, and climbing ramp and stairs but

- 10 -

occasionally climbing ladders, ropes, and scaffolds.  The ALJ also determined that Claimant should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation.  As noted above, Claimant has the burden at step four of establishing his RFC.  See Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004).  On the other hand, the ALJ has the responsibility of assessing the RFC based on all the relevant evidence, including "at least some supporting [medical] evidence from a professional."  Id. at 738.

Determination of residual functional capacity is a medical question and at least "some medical evidence 'must support the determination of the claimant's [residual functional capacity] and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'"  Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)).  Further, determination of residual functional capacity is "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Similarly, in making a finding of residual functional capacity, an ALJ may consider non-medical evidence, although the residual functional capacity finding must be supported by some medical evidence.  See Lauer, 245 F.3d at 704.

There is no medical evidence to support the ALJ's RFC assessment.  The assessment mirrors that of a non-medical state agency consultant.  Although, as noted by the Commissioner, the ALJ did not adopt the PRFCA completed by the agency consultant, the limitations found by the ALJ, e.g. avoiding concentrated exposure to fumes, odors, dust, gases, and poor ventilation; occasional lifting of twenty pounds, frequently lifting ten pounds, and standing and walking about

six hours in an eight-hour workday; sitting about six hours in an eight-hour workday; unlimited

capacity, other than shown for lifting and/or carrying, to push and/or pull; and postural limitations

to be limited to occasional when climbing ladders, ropes and scaffolds, do not appear elsewhere in

the record.  The language appears to have been drawn from the PRFCA.  Indeed, the ALJ's

decision fails to offer any support for his RFC findings.  The only medical evidence on the record

relevant to Claimant's RFC was that of Dr. Demrolis, the consultative medical consultant, who

found Claimant's range of motion values to be normal.  Indeed, Dr. Demorlis only noted "Done"

when answering the question "[d]escribe this patient's ability to perform work-related functions

such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking and

traveling despite any observed functional limitations." (Tr. 121).  Dr. Demorlis placed no lifting,

postural, or environmental limitations on Claimant, nor did he state there were no such limitations.

Although the absence of any finding by an examining physician that a claimant is disabled is

relevant when evaluating an ALJ's RFC assessment, see Young v. Apfel, 221 F.3d 1065, 1069

(8th Cir. 2000); Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006), the ALJ's conclusions

about Claimant's RFC have only one source in the record - the PRFCA of a non-examining

consultant who is not a medical professional.  Cf. Id. (finding that ALJ properly discounted

medical source statement and narrative opinion of treating physician about claimant's physical

residual functioning because both were internally inconsistent and unsupported by the record).

Moreover, it is not enough the record contains inaccuracies; rather, the ALJ must specifically

demonstrate in his decision that he considered all the evidence.  See Masterson, 363 F.3d at 738-

39.

      The undersigned finds that the ALJ's RFC determination is not supported by substantial

evidence.  The ALJ did not provide a rationale for his RFC nor did he cite any medical opinions supporting his determination.  The Court recognizes that the ALJ did cite to the contemporaneous medical record in support of the medical limitations he placed on Claimant, however, the Court does not find that this is sufficient to overcome the error cited above.  The medical record is devoid of a medical opinion regarding Claimant's ability to function in the workplace with his impairments supporting the ALJ's RFC determination.  Therefore, the Court concludes that the case should be remanded to the ALJ for rehearing.

   **IT IS HEREBY ORDERED** that the decision of the Commissioner be REVERSED and the this case be REMANDED for further proceedings as set forth above.


                                        /s/ Terry I. Adelman
                                        UNITED STATES MAGISTRATE JUDGE


Dated this   15th   day of March, 2012.